# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOREM VASCULAR, Pty. Ltd., an Australian proprietary limited company,<br><br>Plaintiff,<br><br>v.<br><br>CYTORI THERAPEUTICS, Inc., a Delaware corporation,<br><br>Defendants. | Case No.: 18cv815 MMA (MDD)<br><br>**ORDER GRANTING DEFENDANT CYTORI THERAPEUTICS, INC.'S MOTION TO DISMISS**<br><br>[Doc. No. 7] |

Plaintiff Lorem Vascular, Pty. Ltd. ("Plaintiff") filed a Complaint against Cytori Therapeutics, Inc. ("Cytori") alleging three causes of action for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) promissory estoppel. *See* Complaint (hereinafter "Compl."). Cytori moves to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 7-1. Plaintiff filed an opposition to Cytori's motion, to which Cytori replied. *See* Doc. Nos. 10, 11. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, the Court **GRANTS** Cytori's motion to dismiss.

# BACKGROUND[1]

In 2013, Plaintiff began discussions with Cytori regarding an agreement that would grant Plaintiff an exclusive license to market and sell some of Cytori's products in China, Hong Kong, Malaysia, Singapore, and Australia for 30 years. Compl. ¶ 7. On October 23, 2013, Plaintiff and Cytori entered into two written agreements: (1) a License Agreement; and (2) a Stock Purchase Agreement. *Id*. ¶ 8. Under the License Agreement, Plaintiff agreed to pay $500 million in exchange for a thirty year exclusive license to Cytori's products. *Id*. ¶ 8. Under the Stock Purchase Agreement, Plaintiff agreed to pay two $12 million installments in exchange for 8 million shares of Cytori's common stock. *Id*. Both the License Agreement and Stock Purchase Agreement contained integration clauses, as well as clauses prohibiting oral modification. *See* Compl., Ex. 1 at 8.[2] Upon signing the Stock Purchase Agreement, Plaintiff made its first $12 million payment. *Id*. ¶ 9. The parties entered into an Amended License Agreement on January 30, 2014, which changed the amount of Cytori product Plaintiff was required to initially order, subject to regulatory approval of Cytori's product in China. *See* Doc. No. 7-3 ("RJN") at 56.[3]

Plaintiff alleges that shortly after entering into the initial License and Stock Purchase Agreements, in response to issues with the License Agreement, Plaintiff and Cytori began to discuss a modification to the Stock Purchase Agreement. *Id*. In late November 2013, Plaintiff alleges Cytori orally agreed to purchase 5% of Plaintiff's common stock in exchange for $5 million. *Id*. Plaintiff concedes the agreement was never reduced to writing. *Id*. Based upon the oral agreement, Plaintiff delivered its second payment of $12 million to Cytori, and made 5% of its common stock available for

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

[2] Citations to this document refer to the pagination assigned by the CM/ECF system.

[3] Citations to this document refer to the pagination assigned by the CM/ECF system.

Cytori's purchase. *Id.* ¶ 12. On December 26, 2013, the Cytori Board of Directors approved a "motion for the Company to invest $5MM into Lorem Vascular." *Id.* ¶ 13. On or about September 9, 2014, Cytori provided Plaintiff with a copy of the Board's minutes to allegedly reassure it that Cytori would perform on the oral modification. *Id.* Plaintiff alleges Cytori kept pushing back the stock purchase date until December 29, 2017, when Cytori informed Plaintiff it had no obligation to go through with the $5 million investment. *Id.* ¶ 10. Plaintiff alleges it has been and remains willing and able to tender 5% of its shares to Cytori in exchange for $5 million. *Id.* ¶ 15. As a result, Plaintiff commenced the instant action.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

### A. Cytori's Request for Judicial Notice

As an initial matter, Cytori requests the Court take judicial notice of three exhibits in connection with its motion to dismiss. *See* RJN. Exhibit 1 is a copy of minutes from the Cytori Board of Directors meeting held on December 26, 2013. *See id.* at 2. Exhibit 2 is a copy of the parties' License Agreement dated October 28, 2013. *See id.* Exhibit 3 is a copy of the parties' Amended License Agreement dated January 30, 2014. *See id.* Plaintiff objects to Cytori's request for judicial notice. *See* Doc. No. 8-1.

Generally, a district court's review on a 12(b)(6) motion to dismiss is "limited to the complaint." *Lee*, 250 F.3d at 688 (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)). However, "a court may take judicial notice of matters of public record." *Id.* at 689 (internal quotations omitted). Additionally, pursuant to the doctrine of incorporation by reference, "courts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). Courts "may treat such a document as part of the complaint, and

thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

Here, Plaintiff challenges the authenticity of Exhibit 1, arguing that it has only been provided with a redacted version of the minutes from the Board of Directors meeting, and that Exhibit 1 and its redacted version are not the same. *See* Doc. No. 8-1 at 5. However, whether or not a party had access to and reviewed the proffered documents is a matter unrelated to their authenticity—i.e., whether the documents are what the proponent claims. *See Davis*, 691 F.3d at 1161-62. Even if the Court assumes Plaintiff did not read the complete version of the minutes from the meeting, Plaintiff does not cast doubt on whether Exhibit 1 is an accurate reproduction of the original document. *See Id*. at 1161. Contrary to Plaintiff's contention, a cursory review of the documents reveal that they are the same, which is further supported by the declaration of Tiago Girao submitted in support of Defendant's request. *See* Doc. No. 7-2. Moreover, Plaintiff references the minutes from the Board meeting numerous times in his Complaint. *See* Compl. ¶¶ 1, 9-10, 13; *see also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (noting that a plaintiff's ongoing and substantial reliance on a document as a basis for his allegations "substantially weakens" his position). Thus, the Court finds Plaintiff's objection is insufficient to challenge the authenticity of Exhibit 1.

Plaintiff also objects to Exhibits 2 and 3. Doc. No. 8-1 at 7-8. Plaintiff argues that although his "Complaint does reference the first license agreement, it is not central to any of LV's claims." *Id*. at 8. However, Plaintiff indicates the reasoning behind the alleged oral modification to the Stock Purchase Agreement was due to issues with the License Agreement. *See* Compl. ¶ 8. Moreover, Plaintiff does not question the authenticity of either the License or Amended License Agreements. Although Plaintiff does not explicitly reference the Amended License Agreement in his Complaint, Plaintiff's claims are relevant to its content. *See, e.g., Coto Settlement v. Esienberg*, 593 F.3d 1031, 1038 (9th Cir. 1999) (admitting a document not explicitly referenced in the complaint when the plaintiff's claim depends on the contents and no party questions the authenticity of the

documents).

Having reviewed the three exhibits attached to Cytori's request for judicial notice, the Court finds that the proffered documents have been incorporated by reference into the Complaint. *Ritchie*, 342 F.3d 903 at 908. Accordingly, the Court **GRANTS** Cytori's request for judicial notice.

**B.     Cytori's Motion to Dismiss**

In its motion, Cytori argues that the Court should dismiss Plaintiff's Complaint for the following reasons: (1) Plaintiff's breach of contract claim is premised on an oral contract that did not exist; (2) Plaintiff's breach of the implied covenant of good faith and fair dealing claim fails because there was no valid contract; and (3) Plaintiff's promissory estoppel claim fails because there was no reasonable or foreseeable reliance. *See* Doc. No. 7-1 at 2. The Court addresses Cytori's arguments in turn.

**1.   Breach of Contract**

Plaintiff alleges it entered into a valid oral modification to the Stock Purchase Agreement with Cytori, requiring Plaintiff to sell 5% of its stock to Cytori in exchange for $5 million, and that Cytori failed to perform. *See* Compl. ¶ 12. Cytori claims Plaintiff's breach of contract claim is subject to dismissal because: (a) the Stock Purchase Agreement prohibits oral modifications; (b) the alleged oral modification lacks consideration; and (c) the claim is untimely. *See* Doc. No. 7-1 at 5-9.

To bring a cause of action for breach of contract, Plaintiff must prove: "(1) the existence of a contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).[4] Under federal pleading standards, a "plaintiff must identify with specificity the contractual obligations allegedly

---

[4] The parties agree that in light of the Delaware choice of law provision contained in the parties' Stock Purchase Agreement (*see* Compl., Ex. 1 at 8), Delaware law governs Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims. *See* Doc. No. 10 at 8. As such, the Court applies Delaware law to Plaintiff's first and second causes of action.

breached by the defendant." *Misha Consulting Grp., Inc. v. Core Educ. & Consulting Solutions, Inc.*, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013). "[M]ere legal conclusions that a contract existed . . . will be insufficient to survive a motion to dismiss." *Garibaldi v. Bank of Am. Corp.*, 2014 WL 172284, at *3 (N.D. Cal. Jan. 15, 2014).

### a. Waiver of the Stock Purchase Agreement's 'No Oral Modification' Clause

Cytori argues that Plaintiff's breach of contract claim fails because the Stock Purchase Agreement expressly prohibits oral modifications, and that Plaintiff fails to allege the parties waived this provision. Doc. No. 7-1 at 5. Cytori further claims that Plaintiff fails to allege that the parties waived this provision of the Stock Purchase Agreement through their conduct. Doc. No. 11 at 2.

Delaware courts have noted that "one can colorably take the view" that based on the jurisprudence in Delaware, "Delaware looks with disfavor on, but does not foreclose entirely, claims that, irrespective of a clear contractual provision requiring that waivers or modifications be made in writing, a waiver or modification was effected by oral statements or conduct." *Eureka VIII, LLC v. Niagara Falls Holdings, LLC*, 899 A.2d 95, 109 (Del. Ch. 2006). "In an effort to screen out parties' attempts to single-handedly change contracts under the guise of oral modifications, courts have established a high evidentiary burden for parties asserting such changes." *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1230 (Del. Ch. 2000). "Delaware law raises the level of proof for oral waiver from mere preponderance to clear and convincing evidence." *Weyerhauser Co. v. Domtar Corp.*, 204 F. Supp. 3d 731, 739 (D. Del. 2016) (internal quotation marks and citation omitted).

Here, Plaintiff first contends that the parties orally agreed to waive the "no oral modification" clause of the Stock Purchase Agreement. *See* Doc. No. 10 at 8. As Cytori notes, the Stock Purchase Agreement expressly prohibits oral modifications. The relevant portion of the Agreement provides:

> This Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter herein and merges all prior discussions between them with regard to such subject matter. *No modification of or amendment of this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by the parties to the Agreement.* The failure by either party to enforce any rights under this Agreement shall not be construed as a waiver of any rights of such party.

Compl., Ex. 1 at 8 (emphasis added). Aside from stating in conclusory fashion that "the parties entered into a Stock Purchase Agreement, which was then modified by an oral agreement," Plaintiff does not allege any facts in its Complaint to support its contention that the parties orally agreed to waive this provision. As such, Plaintiff has not met its burden of proof for establishing oral waiver. *See Pine River Master Fund Ltd. v. Amur Fin. Co., Inc.*, No. 2017-0145-JRS, 2017 WL 4548143, at *17 (Del. Ch. Oct. 12, 2017) (finding no oral modification of prior written contract because of "the parties' clear intent, as expressed in the [] Agreement, that no such oral agreements will modify the parties' fully integrated written agreement.").

Plaintiff next asserts that the parties waived the clause prohibiting oral modifications in the Stock Purchase Agreement through their conduct. *See* Doc. No. 10 at 8.[5] Plaintiff cites to *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28, 30 (Del. 1972) in support of its argument that the parties' conduct modified the written Stock Purchase Agreement. *See* Doc. No. 10 at 8-9. In *Pepsi-Cola*, the parties entered into written agreements relating to the price of Pepsi-Cola concentrate. 297 A.2d at 30. Over the course of fifteen years, the parties changed the price of the concentrate numerous times without modifying the underlying written agreements. *See id.* at 31-32. The Supreme Court of Delaware found that the parties' conduct over a fifteen-year period directly contradicting the original written agreements "indicates clearly" that the parties agreed to the modification. *Id.* at 33.

---

[5] Citations to this document refer to the pagination assigned by the CM/ECF system.

Plaintiff points to several allegations in the Complaint that it claims are sufficient to satisfy Delaware's "high evidentiary burden" with respect to waiver by conduct. *Rutledge & Co.*, 750 A.2d at 1230. First, Plaintiff alleges that the parties "began to discuss" a modification to the Stock Purchase Agreement. Compl. ¶ 9. As Cytori notes, however, any such discussions would have occurred prior to the alleged oral agreement and thus cannot evidence conduct consistent with waiver of the clause prohibiting oral modifications. *See* Doc. No. 11 at 4. Second, Plaintiff claims that Cytori agreed to purchase 5% of its stock, and third, it made 5% of its stock available for purchase by Cytori. *See* Compl. ¶¶ 9, 12. While such allegations potentially evidence offer and acceptance, such allegations do not bear on any conduct by the parties that evidence an agreement to waive the prohibition on oral modifications in the Stock Purchase Agreement. Fourth, Plaintiff claims that it made its second $12 million payment to Cytori. *See* Compl. ¶ 12. Unlike *Pepsi-Cola*, where the court found an oral modification based on conduct contrary to the parties' written agreements, Plaintiff concedes that it was required to tender the $12 million pursuant to the terms of the Stock Purchase Agreement. Moreover, such conduct suggests the continued existence of the Stock Purchase Agreement, not that the Agreement had been modified.

Fifth, Plaintiff alleges that at its December 2013 meeting, the Board approved a motion for the purchase of Plaintiff's stock. *See* Compl. ¶ 9. At the meeting, the Board discussed "the recently executed Lorem . . . License and Supply Agreement" and "proposed amendments to that Agreement." RJN at 10. Thus, the Board minutes refer to a potential modification of the *License Agreement*—not the Stock Purchase Agreement. *See id.* While Cytori's Board ultimately approved a motion to amend the License Agreement at the meeting (*see id.* at 11), the License Agreement was amended *in writing* on January 30, 2014 (*see id.* at 79). The Amended License Agreement does not include any provision relating to an investment by Cytori into Lorem. Moreover, the Amended License Agreement includes a full integration clause which provides that the written agreement constitutes "the entire understanding and agreement between the Parties" and

"supersedes, cancels and annuls in its entirety any and all prior or contemporaneous agreements and understandings, express or implied, oral or written[.]" RJN at 78.

Taking Plaintiff's allegations as true, the parties' course of conduct does not support Plaintiff's contention that the parties waived the clause prohibiting oral modifications in the Stock Purchase Agreement. In fact, the parties' conduct suggests that the parties only modified agreements in writing, as evidenced by the Amended License Agreement entered into on January 30, 2014. Thus, the Court finds that Plaintiff has also not met its burden of alleging waiver by conduct. *See Reserves Dev. LLC v. Severn Sav. Bank*, No. 2502-VCP, 2007 WL 4054231, at *8 (Del. Ch. Nov. 9, 2007) ("[U]nder this high evidentiary burden, Delaware law recognizes oral modifications of written agreements only when plaintiffs present specific and direct evidence such that there is no doubt regarding the parties' intention."), *aff'd*, 961 A.2d 521 (Del. 2008).

### b. Consideration

Cytori next argues that Plaintiff's breach of contract claim is defective because Plaintiff does not allege consideration in support of the alleged oral contract. *See* Doc. No. 7-1 at 7.

"An offer to modify a contract is ineffective unless agreed to by all parties and supported by valid consideration." *Miller v. Newsweek, Inc.*, 660 F. Supp. 852, 858 (Del. 1987) (internal quotations and citations omitted). Consideration is a "benefit to a promisor or a detriment to a promisee pursuant to the promisor's request." *Continental Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232 (Del. Ch. 2000). "Past consideration, as opposed to true consideration, however, cannot form the basis for a binding contract. A party cannot rely on a pre-existing duty as his legal detriment in an attempt to formulate a contract." *Id*.

Here, Plaintiff alleges two forms of consideration in support of the alleged oral modification: (1) delivery of its second $12 million payment; and (2) making 5% of its common stock available for Cytori's purchase. *See* Compl. ¶¶ 12, 27. Regarding the $12 million payment, Plaintiff concedes it was required to pay two installments of $12 million

based upon the original written Stock Purchase Agreement. *See id.* ¶ 8. Plaintiff, relying on the Restatement, Second of Contracts § 89, argues that consideration is not necessary "if justice requires enforcement of the modification because of material change of position in reliance on the promise . . . ." Doc. No. 10 at 9. Plaintiff simply alleges that "in response to issues with the License Agreement" the parties began to discuss a modification to the Stock Purchase Agreement. Compl. ¶ 9. The issues referred to "dealt with a regulatory approval issue for the technology that LV was licensing from Cytori." *Id.* Such allegations are vague, conclusory, and insufficient to show a material change in circumstance. *See Pareto*, 139 F.3d at 699 ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss"). Thus, the Court finds that based on Plaintiff's current allegations, the $12 million payment cannot form the basis of consideration in support of the alleged oral modification.

Plaintiff further claims that it made 5% of its common stock available to Cytori for purchase. *See* Doc. No. 10 at 16. However, Cytori argues it never accepted Plaintiff's offer. *See* Doc. No. 7-1 at 7. Plaintiff acknowledges it never transferred, nor did Cytori receive, any of the shares that were part of the alleged agreement. *See* Compl. ¶ 15. Moreover, although the Board Minutes reveal that there was some discussion regarding a $5 million investment for a 5% *preferred equity position* through an amendment to the *License Agreement*, the Board Minutes do not reference any agreement regarding Plaintiff's common stock. *See* RJN at 10. As such, the Court finds that Plaintiff has not sufficiently alleged "a detriment to a promisee pursuant to the promisor's request." *Continental Ins. Co.*, 750 A.2d at 1232.

### c. Statute of Limitations

Lastly, Cytori argues that even if Plaintiff could allege the parties orally agreed to modify the Stock Purchase Agreement, and that the agreement was supported by consideration, Plaintiff's breach of contract claim is barred by the statute of limitations. *See* Doc. No. 7-1 at 9-10.

Delaware applies a three year statute of limitations in breach of contract claims.

Del. Code Ann. tit. 10, § 8106. The three year statute of limitations begins to run when a contract is breached. *Freedman v. Beneficial Corp.*, 406 F. Supp. 917, 922 (D. Del. 1975). "Under Delaware law, if a contract does not specify a time period for performance, the court will infer a reasonable time for performance." *Cerabio LLC v. Wright Medical Tech., Inc.*, 410 F.3d 981, 996 (7th Cir. 2005). "It is a question of fact as to what time period is reasonable." *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, No. N15C-02-059, 2015 WL 11120934, at *4 (Del. Super. Ct. Dec. 29, 2015). "That does not mean, though, that reasonableness can never be decided as a matter of law . . . . Courts of this state have recognized that a reasonableness inquiry … can be decided on summary judgment in appropriate cases." *HIFN, Inc. v. Intel Corp.*, No. Civ. A. 1835-VCS, 2007 WL 1309376, at *11 (Del. Ch. May 2, 2007). Moreover, a court should not imply a term in a contract where there is an express written term already governing the same subject matter. *See USX Corp. v. Prime Leasing, Inc.*, 988 F.2d 433, 439 (3d Cir. 1993).

Here, Plaintiff alleges the terms of the oral agreement between Plaintiff and Cytori were finalized in late November 2013. Compl. ¶ 9. However, Plaintiff claims that Cytori "kept pushing back the stock purchase date, while all along assuring [Plaintiff] that the deal was still in place." *Id.* ¶ 10. Plaintiff indicates that there was no date placed on when the transaction between Plaintiff and Cytori would occur. *See* Doc. No. 10 at 17. Plaintiff further alleges it was not until December 29, 2017, that Cytori claimed it had no obligation to invest $5 million. *Id.* Under Delaware law, "if a contract does not specify a time period for performance, the court will infer a reasonable time for performance." *Cerabio,* 410 F.3d at 496. The Court is mindful that "[w]hether a party to a contract performed in a reasonable time is ordinarily a question of fact and thus often inappropriate for resolution at the summary judgment stage." *HIFN, Inc.*, 2007 WL 1309376, at *11; *see also Dechant v. Williams*, 1990 WL 1104786, at *2 (Del. Ch. May 16, 1990) (noting that the determination of whether a party to a contract performed within a reasonable time is rarely appropriate on a summary judgment motion). Thus, the Court

is unable to determine as a matter of law at this stage of the proceedings that Plaintiff's breach of contract claim is barred by the statute of limitations. As such, dismissal on this basis is inappropriate.

### d. Summary

In sum, Plaintiff fails to allege facts sufficient to show that the parties waived the prohibition on oral modifications contained in the Stock Purchase Agreement, and that there is any consideration to support the alleged oral modification. As such, the Court **GRANTS** Cytori's motion and **DISMISSES** Plaintiff's claim for breach of contract without prejudice, and with leave to amend.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff further alleges that Cytori breached the implied covenant of good faith and fair dealing by promising to invest $5 million into Plaintiff's stock, and failing to do so. *See* Compl. ¶ 21. Cytori argues Plaintiff's second cause of action should be dismissed because no agreement to modify the Stock Purchase Agreement exists, and Plaintiff fails to identify any terms for the Court to imply into the alleged modification. *See* Doc. No. 7-1 at 10-11.

The implied covenant of good faith and fair dealing requires a contractual relationship between parties, and "involves a 'cautious enterprise,' inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010). Delaware law "will only imply contract terms when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected." *Id*. at 1126. "Delaware's implied duty of good faith and fair dealing is not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract." *Id*. at 1128. "An interpreting court cannot use an implied covenant to re-write the agreement between the parties, and should be most chary about implying a contractual protection when the contract could easily have been drafted

to expressly provide for it." *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 897 (Del. 2015) (internal quotation marks omitted).

"[A] party may only invoke the protections of the covenant when it is clear from the underlying contract that the contracting parties would have agreed to proscribe the act later complained of … had they thought to negotiate with respect to that matter." *Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 816 (Del. 2013) (internal quotation marks and citation omitted). "The Delaware Supreme Court has cautioned" that the covenant of good faith and fair dealing is 'narrow and carefully crafted,' and Delaware courts have found it breached in extremely limited circumstances." *Carroll v. ABM Janitorial Servs.-Mid Atl. Inc.*, 569 F. App'x. 110, 113 (3d Cir. 2014) (quoting *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 437 (Del. 1996)).

Here, the Court finds that in construing Plaintiff's allegations in the light most favorable to it, Plaintiff fails to allege facts sufficient to show that a contract to modify the Stock Purchase Agreement existed. In order to bring a claim under the implied covenant of good faith and fair dealing, a Plaintiff must first show that a contract existed. *See Nemec*, 991 A.2d at 1126 (noting that courts "must assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal."). Moreover, even if the Court were to assume the oral modification was an implied term of the written Stock Purchase Agreement, a written modification of the Stock Purchase Agreement could have been drafted to expressly provide for the purchase of 5% of Plaintiff's stock. *See Nationwide Emerging Managers, LLC*, 112 A.3d at 897 (noting a court should be hesitant to imply "a contractual protection when the contract could easily have been drafted to expressly provide for it.") (internal quotation marks omitted). As such, because Delaware law only finds a breach in "extremely limited circumstances[,]" the Court finds Plaintiff's allegations are insufficient to state a claim for breach of the implied covenant of good faith and fair dealing. *Carroll*, 569 F. App'x. at 113.

Accordingly, the Court **GRANTS** Cytori's motion and **DISMISSES** Plaintiff's

breach of implied covenant of good faith and fair dealing claim without prejudice, and with leave to amend.

### 3. Promissory Estoppel

In its third cause of action, Plaintiff asserts a claim for promissory estoppel. Specifically, Plaintiff alleges Cytori promised to invest $5 million into Plaintiff's stock, Cytori knew or should have known that Plaintiff would reasonably rely on Cytori's promise, and, as a result of its reliance on Cytori's promise, Plaintiff suffered financial loss. *See* Compl. ¶¶ 25-29. Cytori argues Plaintiff's reliance on the alleged oral modification was unreasonable, and that Plaintiff has not alleged an injury as a result of its reliance. *See* Doc. No. 7-1 at 12-13.

As an initial matter, Defendant asserts California law applies to Plaintiff's promissory estoppel claim because it is "an equitable doctrine that only applies when no contract exists." Doc. No. 7-1 at 15. Plaintiff does not address the issue, nor does Plaintiff cite to any authority in support of its promissory estoppel argument. *See* Doc. No. 10 at 19-20.

The Court applies California's choice-of-law rules to determine whether to apply California or Delaware law. *See Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148 (Cal. 1992). Under California's choice-of-law rules, "[t]he scope of a contract's choice-of-law clause is determined by the body of law identified in the agreement, unless the agreement specifies a different scope." *JMP Secs. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1035 (N.D. Cal. 2012) (citing *Washington Mut. Bank. FA v. Superior Court*, 24 Cal. 4th 906, 916 n.3 (2001)); *see also Batchelder v. Kawamoto*, 147 F.3d 915, 918 n.2 (9th Cir. 1998). Thus, because the Stock Purchase Agreement contains a Delaware choice of law provision (*see* Compl., Ex. 1 at 8), the Court applies Delaware law to determine whether Plaintiff's promissory estoppel claim falls under the contractual choice of law provision.

"Delaware courts examine whether the contracting parties drafted the choice-of-law provision broadly or narrowly." *VSI Sales, LLC v. Int'l Fidelity Ins. Co.*, No. 15-

507-GMS, 2015 WL 5568623, at *3 (D. Del. Sept. 22, 2015). Specifically, Delaware courts have found that a choice-of-law provision that applies to "any claim arising out of or relating to" a contract is broad enough to also cover quasi-contract and tort claims arising from contractual agreements. *Gloucester Holding Corp. v. U.S. Tape and Sticky Prods., LLC*, 832 A.2d 116, 124 (Del. Ch. 2003). Narrow choice-of-law provisions, however, apply only to claims directly arising from the contract itself. *See id.* Here, the choice-of-law provision provides that the Stock Purchase Agreement "and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Delaware[.]" Compl., Ex. 1 at 8. This clause encompasses "*all acts and transactions*," and thus is sufficiently broad to include a claim for promissory estoppel. *Id.* (emphasis added); *see also Gloucester Holding Corp.*, 832 A.2d at 124. As such, the Court applies Delaware law to Plaintiff's promissory estoppel claim.[6]

Under Delaware law, a plaintiff asserting a claim for promissory estoppel must show: "(1) a promise was made; (2) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (3) the promisee reasonably relied on the promise and took action to his detriment; and (4) such promise is binding" because the only way to avoid injustice is to enforce the promise. *SIGA Tech., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 347-48 (Del. 2013) (internal citations omitted). "The purpose of the promissory estoppel doctrine is to prevent injustice." *Lord v. Souder*, 748 A.2d 393, 398 (Del. 2000) (internal citations omitted). "[A] promissory estoppel analysis is not applicable to cases in which the alleged promise is supported by consideration." *Genencor Intern., Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 12 (Del. 2000). "[P]romissory

---

[6] Even if the Court applied California law to Plaintiff's promissory estoppel claim, the Court would reach the same result below. *See Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000) ("[U]nder the doctrine of promissory estoppel, 'a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'") (quoting Restatement, Second, of Contracts § 90).

1 estoppel is more accurately viewed as a consideration substitute for promises which are
2 reasonably relied upon, but which would not otherwise be enforceable." *Lord*, 748 A.2d
3 at 404.
4      Here, Plaintiff alleges Cytori promised, or represented to Plaintiff, that it would
5 invest $5 million by purchasing 5% of Plaintiff's common stock shares. *See* Compl. ¶
6 27. However, Plaintiff's allegations are insufficient to show that Plaintiff reasonably
7 relied on the promise and took action to its detriment. Plaintiff states it "reasonably
8 relied on Cytori's promises and representations and was induced to, and did, make the
9 second $12 million payment to Cytori and made 5% of its common stock available for
10 purchase by Cytori, and otherwise reasonably relied to its detriment." *Id*. First, Plaintiff
11 does not allege any facts in support of its claim that it reasonably relied on Cytori's
12 alleged promise. Second, as mentioned above, Plaintiff concedes it was required to make
13 the $12 million payment per the terms of the Stock Purchase Agreement. Moreover,
14 Plaintiff does not allege any facts to show that making 5% of its common stock shares
15 available for purchase resulted in its detriment. *See id*. ¶ 15. Plaintiff further claims that
16 as a result of its reliance on Cytori's promise, it has suffered "expenses" and "other
17 financial losses." *Id*. ¶ 29. The Court finds these allegations to be conclusory, and
18 insufficient to demonstrate Plaintiff took any action to its detriment. As such, the Court
19 finds Plaintiff fails to state a claim for promissory estoppel. *See Pareto*, 139 F.3d at 699
20 ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a
21 motion to dismiss").
22      Accordingly the Court **GRANTS** Cytori's motion and **DISMISSES** Plaintiff's
23 promissory estoppel claim without prejudice, and with leave to amend.
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## Conclusion

Based on the foregoing, the Court **GRANTS** Cytori's motion to dismiss and dismisses Plaintiff's Complaint with leave to amend. Plaintiff must file an amended complaint that cures the deficiencies identified herein on or before **August 3, 2018**.

**IT IS SO ORDERED.**

Dated: July 11, 2018

HON. MICHAEL M. ANELLO
United States District Judge